UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT COBHAM,

                        Plaintiff,

-against-

THE NEW YORK RACING ASSOCIATION, INC.,
JUAN DOMINGUEZ, TIM KELLY, JOHN CLYNE,
HARRY PAZMINO, CHYNIA BONNELL, KEITH
DOLESHEL, BRAULIO BAEZA, DAVID O'ROURKE,
and JOI GARNER

                        Defendants.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
22-CV-00456 (JMA) (ARL)

FILED
CLERK

9/16/2024 11:36 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Pro se Plaintiff Robert Cobham brought this civil rights action arising from the enforcement of a COVID-19 safety protocol at a Belmont, New York horse stable and racetrack, and the subsequent refusal to allow Plaintiff to keep his horse there. (See generally, Compl., ECF No. 1.) Presently before the Court is the motion by certain Defendants to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 48.) In this race, the motion beats the Amended Complaint to the finish line. As set forth below, the motion is GRANTED.

**I.    BACKGROUND**

**A.    Facts**

The facts set forth herein are taken from the Amended Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice. See, e.g., Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023). Certain facts are also taken from Plaintiff's pro se opposition to the instant motion. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013); Romain v. State Farm Fire & Cas. Co., 639 F. Supp. 3d 416, 421 n.4 (E.D.N.Y. 2022).

1. **The Parties**

Plaintiff is a thoroughbred racehorse breeder, owner, and trainer licensed by the New York State Gaming Commission ("Commission"). (Am. Compl., ECF No. 36 ¶¶ 4, 12, 60-61.) Plaintiff does business as "Sport of Kings Racing Stable." (Id.)

Defendant New York Racing Association ("NYRA") is the non-profit racing association created "under the authority of New York Racing, Pari-Mutuel Wagering & Breeding Law, § 202" and it has an "exclusive franchise to operate racing at Belmont Park, Aqueduct and Saratoga thoroughbred racetracks." (Id. ¶¶ 13, 95). Defendant David O'Rourke is the President and Chief Executive Officer of NYRA. (Id. at 1.) Defendant Joy Garner is the Executive Vice President, General Counsel, and Corporate Secretary for NYRA. (Id.) Defendant Keith Doleshel is the Racing Secretary for NYRA. (Id. ¶ 81.)

Defendants Braulio Baeza, Juan Dominguez, Tim Kelly, and Chynia Bonnell (collectively, the "Steward Defendants") are NYRA racing stewards. (Id. ¶ 18; contra Mem. L. Supp. Defs.' Mot. Dism. ("Def. Mem."), ECF No. 48-16 at 8 & n.10 (asserting Baeza was not employed by NYRA).) As such, they have "broad" powers. Perez v. Hoblock, 368 F.3d 166, 177 (2d Cir. 2004). For example, they "control . . . all . . . places within the grounds" of Belmont Park; "regulate and control the conduct of all officials and of all owners, trainers, jockeys, grooms and other persons attendant on horses"; "determine all questions" about racing; order examinations of horses; disqualify horses; impose civil penalties; and exclude individuals from Belmont Park. N.Y. Comp. Codes R. & Regs. tit. 9, §§ 4022.9, 4022.11, 4022.12, 4022.13, 4022.16, 4022.17. Parties may appeal to the Commission any penalties imposed by stewards. Id. § 4022.14.

Defendant John Clyne is a Senior Director and Security Officer for NYRA. (Am. Compl., ECF No. 36 ¶ 50.) Defendant Harry Pazmino is a Security Officer for NYRA.[1] (Id. ¶ 38.)

### 2. NYRA Disciplined Plaintiff for Misconduct at Belmont Park

On January 21, 2021, a member of NYRA's security staff issued a Barn Area Violation Summons to Plaintiff for violating NYRA's then-operative facemask requirement for individuals at Belmont Park. (See Pl.'s Opp. Defs.' Mot. Dism. ("Opp."), ECF No. 48-19 ¶ 21; Am. Compl., ECF No. 36 ¶ 15; see also Greenberg Decl. Ex. A, ECF No. 48-2 (memorializing NYRA's face mask requirement); Greenberg Decl. Ex. B, ECF No. 48-3 (reporting Plaintiff's mask violation).) The summons required Plaintiff to appear in seven days before NYRA's Barn Area Violations Panel ("BAVP"). (See Opp., ECF No. 48-19 ¶ 22; Greenberg Decl. Ex. C, ECF No. 48-4.) Plaintiff did not appear before BAVP on the date specified in the summons.

In early February 2021, NYRA security officers approached Plaintiff at Belmont Park and told him that failure to appear before BAVP by 10:30 AM that day would result in consequences for "criminal[] trespassing" and imposition of an "immediate[] ban[]" from NYRA property. (Am. Compl., ECF No. 36 ¶ 16.) Plaintiff appeared before BAVP, then composed of the Steward Defendants, as directed. (Id. ¶¶ 17-18.) Plaintiff asserts he was "threatened, harassed and coerced" and deprived of the ability to "speak or ask any questions." (Id. ¶¶ 20-21.) At the same time, however, Plaintiff reports that he "contest[ed]" the "charges, fines and penalties, assertions[,] and jurisdiction" for the mask violation. (Id. ¶¶ 17-18; see id. ¶ 21 (reporting Plaintiff asked BAVP "to identify" its authority for charging him).) BAVP "declared [Plaintiff] guilty" of the mask violation and fined him $100.00. (Id. ¶ 22; Greenberg Decl. Ex. C, ECF No. 48-4.)

---

[1] Individual Defendants are hereafter referenced by last name. All Defendants except for Braulio Baeza constitute the "NYRA Defendants."

3

In early April 2021, based on Plaintiff's failure to pay the $100.00 fine, the Steward Defendants issued a "badge pickup order" to confiscate Plaintiff's badge reflecting his professional license issued by the Commission. (Am. Compl., ECF No. 36 ¶¶ 30-31, 36.) NYRA security then confiscated Plaintiff's badge. (Id. ¶¶ 29, 31, 35, 104.) NYRA security instructed Plaintiff that his badge would be returned upon payment of the fine. (See id. ¶ 35, 51-53.)

In late May 2021, Plaintiff entered the "security office" at Belmont Park to "inquire [about] and clarify" the fine imposed against him and the confiscation of his badge. (Id. ¶ 39.) Pazmino was on duty and telephoned Bonnell. (See id. ¶¶ 42-44.) Bonnell instructed Pazmino to "demand that [Plaintiff] pay up" the previously imposed fine. (Id. ¶ 43.) Plaintiff remained peaceful, but Pazmino accused Plaintiff of becoming "violent" and "trespassing." (Id. ¶¶ 44-45.) Pazmino "pushed" Plaintiff "against the door and out of the exit of the security office building" and reported the incident to the Nassau County Police Department. (Id. ¶¶ 44, 47.) Nassau County Police officers responded and "found that [Plaintiff] did not break or violate any laws and no arrest was made." (Id. ¶ 47.) NYRA subsequently posted a "criminal trespass notice with [Plaintiff]'s photo all over the back stretch of NYRA property." (Id. ¶ 49.)

In early June 2021, NYRA issued Plaintiff a Barn Area Violation Summons for his "disorderly conduct" against Pazmino in the prior month. (Greenberg Decl. Ex. E, ECF No. 48-6; see Am. Compl., ECF No. 36 ¶ 52 (referring to the summons as being "criminally trespassed"); Greenberg Decl. Ex. D, ECF No. 48-5 (underlying disorderly conduct report).) BAVP fined Plaintiff for his disorderly conduct. (See Am. Compl., ECF No. 36 ¶ 52 (reporting the additional fine without specifying its amount); see also Def. Mem., ECF No. 48-16 at 3 (summarily asserting that the fine totaled $100.00).) Plaintiff "paid the fines in full" and his badge was returned to him. (Am. Compl., ECF No. 36 ¶ 52.)

4

### 3. Great Grandson's Racing Career and Exclusion from Belmont Park

In late September 2021, Plaintiff's thoroughbred horse named Great Grandson ("Horse") ran its maiden race at Belmont Park. (Id. ¶¶ 62-63.) The Horse placed last in a nine-horse race. (Id. ¶¶ 63-64); see America's Day At The Races - September 24, 2021, YouTube (Sept. 24, 2021) https://www.youtube.com/live/qbUM9JuGvZg?t=7465s (hyperlink opens to the beginning of the Horse's race, which concludes at 2:05:50). NYRA placed the Horse on the "poor performance list," which precludes entry into future races, because it lost by twenty-five or more lengths. (Am. Compl., ECF No. 36 ¶¶ 65-66.) Shortly thereafter, the Horse was removed from the poor performance list for completing a half-mile "workout" in fifty-three or fewer seconds. (Id. ¶ 67.)

The Horse next ran in mid-October 2021; it placed last in that six-horse race. (See Am. Compl., ECF No. 36 ¶ 69); America's Day At The Races - October 15, 2021, YouTube (Oct. 15, 2021) https://www.youtube.com/live/gHWccvG8FDs?t=508s (hyperlink opens to the beginning of the Horse's race, which concludes at 10:20). The Horse was again placed on the poor performance list. (See Am. Compl., ECF No. 36 ¶ 73.) The day after the race, Dominguez and Kelly confiscated Plaintiff's badge. (Id. ¶ 72.)

In mid-November 2021, Plaintiff prepared the Horse to again complete the workout required to remove it from the poor performance list. (Id. ¶ 73.) But then "Defendants pulled up en masse in several NYRA vehicles" and prohibited Plaintiff from exercising the Horse until he submitted a veterinarian's report. (Id. ¶¶ 75-76.) Later that day, Plaintiff obtained a veterinarian's report confirming the Horse was eligible to race, and Plaintiff gave that report to Kelly. (Id. ¶¶ 77-78.) Nonetheless, the Horse was banned from the track at Belmont Park. (Id. ¶ 80.) Plaintiff maintains that this ban was due to the Horse being on the poor performance list and that Defendants improperly prohibited the Horse from undertaking the workout required to come off that list.

5

(Opp., ECF No. 48-19 ¶ 39.) Plaintiff telephoned Doleshal about this issue, who insisted that Plaintiff must remove the Horse from Belmont Park. (Am. Compl., ECF No. 36 ¶ 82-83.) Plaintiff declined to do so.

In January 2022, while Plaintiff was walking the Horse around Belmont Park barn, Dominguez and Kelly delivered a letter from Garner. (Id. 86-87.) The letter warned Plaintiff that failure to remove the Horse from Belmont Park in five days would be "deemed a trespass and NYRA may take any legal remedy available to it, including, without limitation, instituting administrative, civil and/or criminal actions." (Greenberg Decl. Ex. N, ECF No. 48-15.)

**B.  Procedural History**

On the same day he received the letter from Garner in January 2022, Plaintiff commenced this case by filing the pro se Complaint against NYRA seeking damages and injunctive relief prohibiting NYRA from excluding Plaintiff and his Horse from Belmont Park. (See Compl., ECF No. 1.) Plaintiff simultaneously filed a motion for a temporary restraining order and preliminary injunction seeking the same injunctive relief. (ECF No. 3.) The Court denied Plaintiff's motion for a temporary restraining order without prejudice, and reserved decision on Plaintiff's motion for a preliminary injunction. (See ECF No. 10; see also ECF No. 14 (denying Plaintiff's motion to reconsider denying his motion for a temporary restraining order).) Then, NYRA moved to dismiss the Complaint and Plaintiff moved for leave to amend it. (ECF Nos. 29, 31.) The Court granted Plaintiff's motion and denied NYRA's motion. (Feb. 1, 2023, Electr. Order.)

Plaintiff subsequently filed the pro se Amended Complaint against Defendants in their individual and official capacities. (ECF No. 36.) In so doing, Plaintiff asserted claims under 42 U.S.C. § 1983 ("Section 1983") for violations of procedural due process, substantive due process, and equal protection rights under the Constitution; a claim under Section 1983 for liability under

6

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); and a claim under New York law for tortious interference with economic advantage.[2]  (ECF No. 36 ¶¶ 98-132.)  The parties then briefed the NYRA Defendants' instant motion to dismiss the Amended Complaint for failure to state a claim.  (ECF No. 48.)

## II. LEGAL STANDARDS

### A. Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim.  FED. R. CIV. P. 12(b)(6).  Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  That standard requires the Court to accept as true all well-pled factual allegations in the Amended Complaint and consider documents attached to the Amended Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice.  E.g., Clark, 89 F.4th at 93.  While the Court accepts Plaintiff's well-pled allegations as true, the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements.  See, e.g., Shara v. Maine-Endwell Cent. Sch. Dist., 46 F.4th 77, 82 (2d Cir. 2022).  To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation").  Determining whether the Amended Complaint

---

[2] The Amended Complaint's Count II is labeled as a claim for an unconstitutional custom, policy, or practice. (ECF No. 36 ¶¶ 109-17.)  Plaintiff later confirmed that Count II is a Monell claim.  (Opp., ECF No. 48-19 at 14-16.)

7

states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 664.

**B.      Section 1983**

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see 42 U.S.C. § 1983. "§ 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 159 (2d Cir. 2005); see Moroughan v. Cnty. of Suffolk, 514 F. Supp. 3d 479, 511 (E.D.N.Y. 2021) (similar). Accordingly, "[t]he factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and alterations omitted); see Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed.").

To "establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). To do so, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti, 983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676).

A Monell claim concerns municipal liability under Section 1983. "Monell expressly prohibits respondeat superior liability for municipalities . . . meaning that a plaintiff must demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 97-98 (2d Cir.

8

2020) (quoting Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). "The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Id. at 97; see Frost v. New York City Police Dep't, 980 F.3d 231, 257 (2d Cir. 2020).

C. **Plaintiff's Pro Se Status**

"Where, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)). This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." McLeod v. Jewish Guild For The Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted). "Nonetheless, a pro se complaint must state a plausible claim for relief." Meadows v. United Servs., 963 F.3d 240, 243 (2d Cir. 2020) (quoting Hogan, 738 F.3d at 515). That is, "dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." Temple v. Hudson View Owners Corp., 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)); see Williams v. Richardson, 425 F. Supp. 3d 191, 201 (S.D.N.Y. 2019) ("[T]he duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." (internal quotation marks omitted)). Ultimately, Plaintiff's pro se status "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." E.g., United States v. Starling,

76 F.4th 92, 99 (2d Cir. 2023) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); see Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (similar).

### III. DISCUSSION

#### A. Plaintiff's Procedural Due Process Claim Fails

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. Plaintiff contends that Defendants violated his procedural due process rights by depriving him of the ability to adequately prepare for and defend himself at the February 2021 hearing that resulted in the $100.00 fine, and confiscating his badge in April 2021 for failing to pay the fine. (See Am. Compl., ECF No. 36 ¶¶ 103-04.) "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Radwan v. Manuel, 55 F.4th 101, 123 (2d Cir. 2022) (quoting Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012)). NYRA Defendants argue that Plaintiff failed to plead either element. (Def. Mem., ECF No. 48-16 at 10-14.) The Court concludes that the second element is lacking.[3]

"[I]n evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (quoting Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996)). When a deprivation occurs under established state procedures, courts use the factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to determine whether

---

[3] The $100.00 fine deprived Plaintiff of a property interest for purposes of procedural due process. See Farina v. Metro. Transp. Auth., 409 F. Supp. 3d 173, 206 (S.D.N.Y. 2019); Rackley v. City of New York, 186 F. Supp. 2d 466, 480-81 (S.D.N.Y. 2002). Confiscating Plaintiff's badge likewise deprived him of a property interest for purposes of procedural due process. See Galvin v. N.Y. Racing Ass'n, 70 F. Supp. 2d 163, 173 (E.D.N.Y. 1998).

the process was constitutionally adequate. See Bhaktibhai-Patel v. Garland, 32 F.4th 180, 197 (2d Cir. 2022); Rivera-Powel, 470 F.3d at 465-66. "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." Rivera-Powell, 470 F.3d at 465 (citing Hellenic Am. Neighborhood Action Comm., 101 F.3d at 880); see Hudson v. Palmer, 468 U.S. 517, 531, 533 (1984). Each of those standards is applied where relevant below.

### 1. Plaintiff Received Due Process in Connection with the Fine

The imposition of the fine against Plaintiff followed an established state procedure. See N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 116 (authorizing the Commission to impose a civil penalty after the respondent is given a "hearing or opportunity to be heard"); N.Y. Comp. Codes R. & Regs. tit. 9, § 4022.13 (authorizing the steward appointed by the Commission to exercise the latter's civil penalty authority, provided the other stewards are given an opportunity to submit recommendations); (see also Opp., ECF No. 48-19 ¶¶ 21-22; Am. Compl., ECF No. 36 ¶¶ 17-18, 22; Greenberg Decl. Ex. C, ECF No. 48-4.) Accordingly, the Court considers the Mathews factors "to determine whether the procedure provided" in connection with the fine was "constitutionally sufficient." Bhaktibhai-Patel, 32 F.4th at 197 (quoting Abdullah v. INS, 184 F.3d 158, 164 (2d Cir. 1999)); see Brody v. Vill. of Port Chester, 434 F.3d 121, 135 (2d Cir. 2005) ("Mathews is the test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due a person deprived of liberty or property."). Those factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

11

Mathews, 424 U.S. at 335; e.g., Black v. Dir. Thomas Decker, 103 F.4th 133, 151 (2d Cir. 2024). Underlying this analysis is the principle that "due process is flexible and calls for such procedural protections as the particular situation demands." Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 191 (2d Cir. 2020) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

The Mathews factors run against Plaintiff. Under the first factor, Plaintiff's interest in defending against a $100.00 fine is "limited." Bens BBQ, Inc. v. Cnty. of Suffolk, 858 F. App'x 4, 7 (2d Cir. 2021) (addressing fines individually ranging from $100.00 to $500.00 and totaling $1,400.00); see Dubin v. Cnty. of Nassau, 277 F. Supp. 3d 366, 389 (E.D.N.Y. 2017) (holding that a private interest in a $45.00 fine is "minimal"). Under the second factor, the risk of an erroneous deprivation is minimal because Plaintiff appeared before BAVP and "contest[ed]" the "charges, fines and penalties, assertions[,] and jurisdiction." (Am. Compl., ECF No. 36 ¶¶ 17-18); see Interboro Inst., Inc. v. Foley, 985 F.2d 90, 93 (2d Cir. 1993) (explaining that a pre-deprivation hearing "ensure[s] that decision-makers have before them the [plaintiff]'s legal arguments and do not act on a one-sided or otherwise incomplete factual presentation"). Moreover, additional pre-deprivation safeguards would add little value given the post-deprivation availability of appealing to the Commission, see N.Y. Comp. Codes R. & Regs. tit. 9, § 4022.14, and commencing an Article 78 proceeding (discussed below). See N.Y. State NOW v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001); see also Chunn v. Amtrak, 916 F.3d 204, 207 (2d Cir. 2019) (recognizing that procedural due process is satisfied for property rights when "there is at some stage an opportunity for a hearing and a judicial determination" (internal quotation marks omitted)). Third, the State had a significant interest in reprimanding Plaintiff to deter him and others from failing to follow mask protocols during the COVID-19 pandemic. See Roman Catholic Diocese v. Cuomo, 592 U.S. 14, 18 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling [government]

12

interest . . . ."); Doe v. Franklin Square Union Free Sch. Dist., 100 F.4th 86, 98 (2d Cir. 2024) (similar); see also N.Y. Comp. Codes R. & Regs. tit. 9, § 4022.13 (authorizing stewards to impose fines up to $25,000.00 "for any action detrimental to the best interests of racing generally").

Further, Plaintiff's procedural due process claim is undermined by the availability of an Article 78 proceeding. Article 78 is a process by which "New York state courts are empowered to issue common law writs of certiorari to review, mandamus, and prohibition" against state actors. Pataki, 261 F.3d at 168 (internal quotation marks omitted); see N.Y. C.P.L.R. § 7801. The Second Circuit has held that an Article 78 proceeding "constitutes a wholly adequate post-deprivation hearing for due process purposes." Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001); see, e.g., Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1077 (2d Cir. 2021); Gonzalez v. Dist. Council 37, AFSCME, AFL-CIO, SSEU Local 371, 843 F. App'x 361, 363-64 (2d Cir. 2021). But see Bens BBQ, 858 F. App'x at 7 (declining to hold that the availability of an Article 78 proceeding is independently sufficient procedural due process where the contested fines are "low compared with the expense and complexity of such a proceeding").

At bottom, "[t]he combination" of the pre-fine notice for and appearance at a hearing before BAVP, the post-fine availability of an appeal to the Commission, and the post-fine availability of an Article 78 proceeding afforded Plaintiff adequate procedural due process. Rivera-Powell, 470 F.3d at 466-67 (affirming dismissal of procedural due process claims where the plaintiff had "some form of pre-deprivation hearing" and could have availed herself of post-deprivation review under New York law); see Oles v. City of New York, No. 22-1620-CV, 2023 WL 3263620, at *1 (2d Cir. May 5, 2023) (affirming dismissal of procedural due process claim regarding $234.60 in fines because appellants could have administratively appealed the fines and challenged them in an Article 78 proceeding); Bens BBQ, 858 F. App'x at 7 (affirming dismissal of procedural due

13

process claim regarding $1,400.00 in fines because the plaintiff could have provided a pre-deprivation written submission and commenced a post-deprivation Article 78 proceeding).

### 2. Plaintiff Received Due Process for the Confiscation of his Badge

Plaintiff alleged that NYRA security personnel confiscated his badge in April 2021 based on a "badge pick-up order" that the Steward Defendants summarily issued. (See Am. Compl., ECF No. 36 ¶¶ 29-37.) Plaintiff's occupational license and badge may be revoked only by the Commission at a hearing for which notice is provided to Plaintiff. See Rac. Pari-Mut. Wag. & Breed. §§ 220(1)-(3), 245; N.Y. Comp. Codes R. & Regs. tit. 9, § 4002.10. As alleged, then, the confiscation of Plaintiff's badge was a random and unauthorized act. See Rivera-Powell, 470 F.3d at 465 (holding that deprivations not consistent with established state procedures are random and unauthorized unless done by "ultimate decision-makers" with "final authority over significant matters" (internal quotation marks and brackets omitted)).[4] Thus, the availability of an Article 78 proceeding for that confiscation dooms the related procedural due process claim. See Green, 16 F.4th at 1077; Rivera-Powell, 470 F.3d at 466; Grillo v. N.Y.C. Transit Auth., 291 F.3d 231, 234 (2d Cir. 2002); Locurto, 264 F.3d at 175.

### B. Plaintiff's Substantive Due Process Claim Fails

Plaintiff asserted a substantive due process claim against NYRA, O'Rourke, and Garner for their failure to exercise "unbiased and impartial judgment" and their undertaking of arbitrary, capricious, and unsound decision making when they "fine[d] and penalize[d], criminally

---

[4] The rule that actions by ultimate decision makers may be deemed taken under official state procedures is inapplicable to stewards because their decisions are not ultimate; their decisions may be appealed to the Commission. See N.Y. Comp. Codes R. & Regs. tit. 9, § 4022.14.

14

trespass[ed] and terminate[d] Plaintiff's racetrack credentials."[5] (Am. Compl., ECF No. 36 ¶¶ 125-28.) NYRA Defendants assert that the substantive due process claim is deficient. (See Def. Mem., ECF No. 48-16 at 14-16.) The Court agrees.

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." Cunney v. Bd. of Trustee of Village of Grand View, N.Y., 660 F.3d 612, 626 (2d Cir. 2011) (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir.1995)). To state a substantive due process claim, Plaintiff must allege (1) a valid liberty interest (2) that the defendants infringed in an arbitrary or irrational manner. Murphy v. Hughson, 82 F.4th 177, 188 (2d Cir. 2023); Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001).

Plaintiff's claim does not make it out of the starting gate. That is, it does not concern a valid liberty interest. "As courts in this Circuit have correctly held, 'the substantive Due Process clause does not protect plaintiffs from modest fines.'" Dubin, 277 F. Supp. 3d at 393 (quoting Leder v. Am. Traffic Sols., Inc., 81 F. Supp. 3d 211, 224 (E.D.N.Y. 2015), aff'd, 630 F. App'x 61, 62 (2d Cir. 2015)) (ellipsis omitted); accord Idris v. City of Chi., 552 F.3d 564, 566 (7th Cir. 2009). Further, "the right of occupational choice is afforded due process protection only when a plaintiff is 'completely prohibited' from engaging in his or her chosen profession." Hu v. City of N.Y., 927 F.3d 81, 102 (2d Cir. 2019) (quoting Conn v. Gabbert, 526 U.S. 286, 292 (1999)) (brackets omitted). Thus, to base his claim on the confiscation of his badge, Plaintiff must show that

---

[5] Plaintiff also asserts for the first time in his opposition brief an additional substantive due process claim because he suffered emotional distress and defamation when NYRA posted a criminal trespass notice at Belmont Park with Plaintiff's picture and date of birth. (Opp., ECF No. 48-19 ¶¶ 63-64.) The Court rejects Plaintiff's effort to recast state law tort claims as a substantive due process claim. See Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992); Schultz v. Inc. Vill. of Bellport, No. 08-CV-0930, 2010 WL 3924751, at *7 (E.D.N.Y. Sept. 30, 2010), aff'd, 479 F. App'x 358 (2d Cir. 2012); accord Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 183-84 (3d Cir. 2020); Waybright v. Frederick Cty., 528 F.3d 199, 204-05 (4th Cir. 2008).

occurrence "operated as a <u>complete prohibition</u> on his ability to practice his chosen profession." Id. at 102-03 (quoting Franceschi v. Yee, 887 F.3d 927, 938 (9th Cir. 2018)) (emphasis added; brackets omitted). But on the contrary, Plaintiff alleged he suffered an inability to work contingent upon and remedied by his payment of a modest fine; that circumstance "do[es] not give rise to a Due Process claim." Id. (explaining that plaintiffs' due process claim failed because they were not completely "driven out of" their occupation); accord Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003); Singleton v. Cecil, 176 F.3d 419, 426 n.8 (8th Cir. 1999); Grider v. Abramson, 180 F.3d 739, 752 n.17 (6th Cir. 1999).

Plaintiff's substantive due process claim fails on the second element too. That requires Plaintiff to "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting Southerland v. City of N.Y., 680 F.3d 127, 151 (2d Cir. 2011)). That standard "is not easily met." N.Y. State Corr. Officers & Police Benevolent Ass'n v. Hochul, 607 F. Supp. 3d 231, 243 (N.D.N.Y. 2022); Ratajack v. Brewster Fire Dep't, Inc., 178 F. Supp. 3d 118, 147 (S.D.N.Y. 2016). Moreover, "substantive due process 'does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit'"—including through an Article 78 proceeding. Harlen Assocs., 273 F.3d at 505 (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)); see Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58-59 (2d Cir. 1985) ("[E]ven an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim, at least when the applicant has a state law remedy." (citation omitted)). Given the availability of an Article 78 Proceeding to address the issues raised in Plaintiff's substantive due process claim, <u>see supra</u> Section III.A, and the required showing of egregiousness and outrageousness, the Court concludes the challenged

16

conduct "did not transgress the 'outer limit' of legitimate governmental action" and therefore "do[es] not give rise to a federal substantive due process claim." Harlen Assocs., 273 F.3d at 505 (quoting Natale, 170 F.3d at 263); see Oles, 2023 WL 3263620, at *1 (affirming dismissal of substantive due process claim because imposing $234.60 in fines did not shock the conscience).

## C.     **Plaintiff's Equal Protection Claim Fails**

The Equal Protection Clause of the Fourteenth Amendment prohibits each state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. That requires "the government [to] treat all similarly situated people alike." Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003) (quoting Harlen Assocs., 273 F.3d at 499). The Amended Complaint asserts the NYRA Defendants deprived Plaintiff "of the equal protection of the law" by precluding him "from NYRA's racetracks" and initiating the "administrative charges against Plaintiff." (ECF No. 36 ¶¶ 119-22.) The Opposition more generally asserts that the NYRA Defendants violated Plaintiff's equal protection rights by selectively enforcing the rules of racing. (ECF No. 48-19 ¶ 68.) NYRA Defendants assert that the claim is deficient. (Def. Mem., ECF No. 48-16 at 16-18; Reply Mem. L. Supp. Defs.' Mot. Dism., ECF No. 48-24 at 6-7.) The Court agrees.

Equal Protection claims may be of the "selective enforcement" or "class of one" varieties. E.g., Hu, 927 F.3d at 91. "[B]oth types of Equal Protection claims require a showing that the plaintiff was treated differently from another similarly situated comparator."[6] Id. at 93. Plaintiff, however, fails to identify any comparators. (See Am. Compl., ECF No. 36; Opp., ECF No. 48-19.) Plaintiff's Equal Protection claim therefore fails. See Ruston v. Town Bd. for the Town of

---

[6]     For a selective enforcement claim, the circumstances of Plaintiff and a comparator "must bear a reasonably close resemblance" such that Plaintiff "was similarly situated in all material respects to the individuals with whom []he seeks to compare h[im]self." Hu, 927 F.3d at 96 (internal quotation marks omitted). For a class of one claim, Plaintiff "must establish that he and a comparator are *prima facie* identical." Id. at 92 (internal quotation marks omitted).

Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010); Panzella v. City of Newburgh, 231 F. Supp. 3d 1, 9-10 (S.D.N.Y. 2017); Norton v. Town of Brookhaven, 33 F. Supp. 3d 215, 239-40 (E.D.N.Y. 2014).

### D.  **Plaintiff's Monell Claim Fails**

Plaintiff purports to bring a Monell claim against NYRA, O'Rourke, and Garner in their individual and official capacities.  (See Am. Compl., ECF No. 36 ¶¶ 109-17; Opp., ECF No. 48-19 at 14-16); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" for which the defendant is an agent).  This claim fails for three reasons.

First, a Monell claim cannot lie against a defendant (other than a municipality) in its individual capacity. Sutton v. Rodriguez, No. 18-CV-01042, 2020 WL 5504312, at *9 n.7 (S.D.N.Y. Sept. 8, 2020); Acquah for J.B. v. City of Syracuse, No. 18-CV-1378, 2020 WL 1510405, at *2 (N.D.N.Y. Mar. 30, 2020); see Monell, 436 U.S. at 690 n.54 (holding Monell claims apply only to local governments); Bellamy v. City of N.Y., 914 F.3d 727, 757 (2d Cir. 2019) (same); Agosto, 982 F.3d at 99 (same).

Second, Plaintiff cannot maintain his Monell claim as an official capacity claim. NYRA and its personnel, including O'Rourke and Garner, are New York State actors. Garcia v. New York Racing Ass'n, Inc., No. 10-CV-01092, 2011 WL 3841524, at *9 (N.D.N.Y. Aug. 29, 2011). Consequently, the Eleventh Amendment deprives this Court of jurisdiction over the official capacity Monell claim.[7]  See Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010); Jimenez v. Bisram, No. 22-CV-3090, 2024 WL 3360340, at *4 & n.3 (E.D.N.Y. July 10, 2024). Moreover, Plaintiff cannot maintain his official capacity Monell claim because "[n]either a state

---

[7]     The exception to this rule under Ex Parte Young, 209 U.S. 123 (1908), which allows certain claims seeking prospective injunctive relief, is inapplicable here.  Plaintiff's constitutional claims concern the fines he paid and the temporary revocation of his badge—which are not "ongoing violation[s]" of federal law.  Vega v. Semple, 963 F.3d 259, 281 (2d Cir. 2020).

nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' [capable of suit] under § 1983." Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (citing Hafer v. Melo, 502 U.S. 21, 26 (1991)); see Florence v. Seggos, No. 21-834, 2022 WL 2046078, at *3 (2d Cir. June 7, 2022).

Third, even if it could be asserted, Plaintiff's Monell claim would fail on the merits for want of an underlying constitutional violation. See supra Sections III.A-C (rejecting Plaintiff's constitutional claims); Goe v. Zucker, 43 F.4th 19, 34 (2d Cir. 2022) (affirming dismissal of Monell claim for lack of an underlying constitutional violation by the individual defendants); Anilao v. Spota, 27 F.4th 855, 874 (2d Cir. 2022) (same).

### E. The Court Declines to Exercise Jurisdiction Over Plaintiff's State Law Claim

NYRA Defendants ask that the Court decline to exercise supplemental jurisdiction over Plaintiff's tortious interference with economic advantage claim given his failure to state a federal claim. (Def. Mem., ECF No. 48-16 at 20.) A district court may decline to exercise supplemental jurisdiction over a state-law claim if, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In making that determination, a district court must balance "values of judicial economy, convenience, fairness, and comity." Klein & Co. Futures, Inc. v. Bd. of Trade of the City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006). Those factors weigh against exercising supplemental jurisdiction here. See, e.g., Jusino v. Fed'n of Cath. Teachers, Inc., 54 F.4th 95, 107 (2d Cir. 2022); Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 78 (2d Cir. 2022). The Court therefore declines to exercise jurisdiction over Plaintiff's state law claim.

### F.     Leave To Amend

The Court denies leave to further amend the Amended Complaint for two reasons.  First, "[a]lthough district courts generally grant pro se plaintiffs leave to amend a complaint, that leave may be denied when a plaintiff has already been given an opportunity to amend." Zaerpour v. Bank of Am. Corp., No. 23-845, 2024 WL 2069555, at *2 (2d Cir. May 9, 2024) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).  Second, amendment by a pro se party may be denied as futile where, as here, the pleading's deficiencies cannot be cured.[8]  See Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

## IV.     CONCLUSION

For the reasons stated above, the Amended Complaint, (ECF No. 36), is DISMISSED and Plaintiff is denied leave to file a further amended pleading.  Consequently, Plaintiff's motion for a preliminary injunction, (ECF No. 3), is DENIED AS MOOT.

Though Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close this case and mail a copy of this Memorandum & Order to Plaintiff at his address of record.

**SO ORDERED.**

Dated:   September 16, 2024
           Central Islip, New York

                                                                    /s/ JMA
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE

---

[8]    The Court concludes that the equal protection claim's failure to identify a comparator cannot be cured because Plaintiff failed to identify a comparator in his opposition brief, in which he otherwise asserted new facts, even after acknowledging that pleading requirement.  (See Opp., ECF No. 48-19 ¶¶ 70-78.)